[No. 12970. Department Two. June 7, 1916.]

LOIE KING et al., Respondents, v. JOHN P. RAMSEY, SENIOR, et al., Appellants.[1]

MASTER AND SERVANT — INJURIES TO SERVANT — ASSUMPTION OF RISKS—INCOMPETENT FELLOW SERVANTS—FRACTIOUS HORSE. One injured while working as a hay forker in stacking hay assumes the risk of the incompetence of a boy driving the horse on the hay fork and the fractious nature of the horse, where, after working one day, he complained about the boy then employed, resulting in the employment of the boy in question, who proved satisfactory to him, and he thereupon continued working with the boy and horse without complaint of either for a period of six days.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered March 11, 1915, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Reversed.

*John I. Melville, Merritt, Oswald & Merritt,* and *Merritt, Lantry & Merritt,* for appellants.

*Samuel P. Weaver* and *Robertson & Miller,* for respondents.

MAIN, J.—This action was brought for the purpose of recovering damages for the death of Arthur King, who was the husband of the plaintiff Loie King and the father of Frances

[1]Reported in 157 Pac. 1077.

and Frederick King. The trial resulted in a verdict for the plaintiffs in the sum of $3,000. From the judgment entered upon the verdict, the defendants appeal.

The facts are these: During the year 1913, the appellants were the owners of two farms in Lincoln county which were three or four miles apart. They resided upon one farm, and Arthur King, for whose death this action was instituted, together with his family, lived upon the other.

King, during the haying season for the year mentioned, was in the employ of the appellants, and at the time of the injury which subsequently resulted in his death, was working with the haying crew in the capacity known as forker. His duties were, when the hay was brought in from the field upon what is known as a sled or float and dumped at the end of the stack, to set the hay fork in order that the hay might be lifted upon the stack. The stacking of the hay was being done by means of a derrick. The hay fork was attached to one end of a rope. To the other end a horse was hitched, and the rope passed over a pulley which was elevated over the stack by means of a derrick.

On or about July 25, 1913, after the stacking operations had been conducted for six or seven days, a load of hay came in, and before driving to the place where it was to be dumped, stopped in order that King might fork up the loose hay that had accumulated at the end of the stack. After this was done, he gave the signal for the driver of the load to drive in. When this signal was given, the horse at the other end of the rope started, pulling the fork from the place where it had been put, about sixteen feet from the stack, towards King, and the prong thereof penetrated his leg below the knee. The man on the stack, seeing the situation, called "whoa," and the horse, which was being driven by one Ralph Lynch, a boy in his fourteenth year, was stopped after it had gone a few steps. The stack at this time was about eight feet high and thirty or forty feet long. It was the sixth or

seventh stack that had been erected since the haying operations began at that place.

After the accident, King was taken into the house where he resided upon the place, and while his wound was being dressed by those present, stated that the accident was due to the negligence of the boy who was driving the horse. About ten days after the accident, King died.

The evidences relied on by the respondents for recovery are the statements of King at the time his wound was being dressed and statements claimed to have been made by the appellant John P. Ramsey, Senior, some time thereafter, to King's wife and one Clarence Reynolds, her brother. In these conversations Mrs. King and Reynolds testified that Ramsey admitted that the boy was careless and reckless, and that the horse was young and fractious, and that that was what caused the accident. Ramsey, at the time the accident occurred, was not present. The only persons present at the time of the accident were King, the driver of the load of hay, the man upon the stack, and the boy driving the horse.

The facts, as testified by the witnesses who were present at the time of the accident, show that the horse started in the ordinary manner and that the boy was in no sense negligent. During the days preceding the accident, when the stacking operations were being carried on, it was customary, when a fork of hay was to be lifted upon the stack, to give the signal, "all right." Whereupon the boy would start the horse. During the days that the horse had been working, it had learned this signal and some times would start when the signal was given. When the accident occurred, the signal given by King was intended to direct the driver of the load of hay to drive into the place where it was to be dumped, but the horse, being familiar with the signal, started when it was given. All the direct evidence upon the question is that the horse was seven years old, gentle, and had previously been used upon this kind of work.

The respondents claim that the declarations of Ramsey relative to the boy and the horse, and the statements of King at the time his wound was being dressed, raise a question of fact which it was the jury's province to determine. It will be assumed, but not decided, that the testimony as to the admissions of Ramsey, which were positively denied by him upon the witness stand, and the statements of King at the time the wound was being dressed, are not overcome, as a matter of law, by the direct testimony of the witnesses who were present at the time of the accident, and whose testimony shows that the boy was not negligent and that the horse started in the usual manner. It will likewise be assumed that the statements of King were a part of the *res gestae*, and were statements of fact and not conclusions; assuming that an issue was thus presented which it was for the jury to determine, whether the accident was due to the negligence of the boy or the nature of the horse, the question arises whether King had assumed the risk? Even if the horse was young and fractious, as claimed by the respondents, there is no evidence that the disposition of the horse was in any sense the cause of the accident.

When the stacking operations began about seven days previous to the accident, a boy by the name of Robacher drove the horse. He worked for one day, or a part of a day, and King complained to Ramsey that the boy was "no good." Ramsey thereupon discharged the boy and employed Lynch. This boy worked continuously thereafter until the day of the accident, a period of approximately six days. King, during all this time, was working as a forker. When the Lynch boy was hired, Ramsey said to King that if the boy did not prove satisfactory to him (King) he would let him go. The second day the Lynch boy was working, Ramsey inquired of King whether the boy was satisfactory, and received the reply: "This boy is all right, you can leave the boy."

Ramsey, as above stated, resided upon his other farm, and was only at the place where the stacking operations were

being conducted for a short time each day. The two places were connected by telephone. No complaint was made by King to Ramsey, or to any one else, that the Lynch boy was not satisfactory. Under these facts, it seems obvious that King assumed the risk incidental to the work in which he was engaged. Had he complained, as requested by Ramsey, if the boy were unsatisfactory, and the boy had been retained notwithstanding such complaint, a different question would be presented.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

MORRIS, C. J., HOLCOMB, PARKER, and BAUSMAN, JJ., concur.